## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

ROBERT EARL HAYES,

      Petitioner,

v.                                                     Case No. 3:21-cv-435-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

## I.   **Status**

Petitioner Robert Earl Hayes, an inmate of the Florida penal system, initiated this action in the Northern District of Florida by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. <u>See</u> Doc. 1. The action was then transferred to this Court. <u>See</u> Doc. 3. Petitioner is proceeding on an Amended Petition. <u>See</u> Doc. 12. He challenges a state court (Duval County, Florida) judgment of conviction for three counts of robbery and one count of possession of ammunition by a convicted felon. Petitioner is serving a life term of incarceration as a Prison Releasee Reoffender. Respondents filed a Response.

<u>See</u> Doc. 14 (Resp.).[1] Petitioner replied. <u>See</u> Doc. 20. This case is ripe for review.[2]

## II.   <u>Governing Legal Principles</u>

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing <u>Chavez v. Sec'y Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. See <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that

state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Ineffective Assistance of Trial and Appellate Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must

show: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

This two-part Strickland standard also governs a claim of ineffective assistance of appellate counsel. Overstreet v. Warden, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id. at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)); see also Burger v. Kemp, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Id.; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (recognizing that "failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." Black v. United States, 373 F.3d 1140, 1142 (11th Cir. 2004); see also Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). Also,

> [a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052.  It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. As such, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under Strickland." Overstreet, 811 F.3d at 1287 (citation omitted).

For both claims of ineffective assistance of trial counsel and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id.

6

(citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc)

(Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   **Factual History**

The following facts are taken from Petitioner's initial brief filed on direct appeal:

> Hayes was charged with three counts of armed robbery and one count of possession of ammunition by a convicted felon. [Count 1 alleged that Petitioner took money from a McDonald's restaurant;] Count 2 alleged that he took an Apple I-phone from Andrew Devoe[;] and Count 3 alleged that he took a Samsung Galaxy from Michael Simon.
>
> Jones, a shift manager at McDonald's, was working along with Briteny Brown and Michael Simon. The restaurant entrance was closed but one could order through the drive-through. Andrew Devoe, an employee who was not working, approached the drive-through on foot. He was talking on his Apple I-phone. Jones and Devoe were talking when two men approached. The short one came through the window first, they pushed Devoe in and the taller one came in afterwards. The short one was armed with a black gun and the taller one had a silver gun. The taller one took Simon and Devoe to another part of the restaurant while the shorter one took Jones and Brown to the office. Brown opened the safe. After the shorter one had the money, they told Brown to open the back door.
>
> Michael Simon walked out of the crew room at McDonald's and saw that it was a robbery. The taller of the robbers ordered h[im] and Devoe to get on the ground. The shorter robber went into the office with Jones and Brown. Simon gave his Samsung Galaxy phone to the robber because he was afraid of the gun.

An Apple I-phone was taken from Devoe.

Without objection, Officer Tirri testified that Devoe advised that his I-phone had been stolen. He utilized a tracking application for I-phones and discovered that the phone was located at the Suburban Lodge on Phillips Highway.

Officer Thompson was given the name Nix through investigation. He learned that Nix might be tied to room 355 of the Suburban Lodge. When he knocked on the door, Hayes answered. Hayes told him Nix was in the bathroom and allowed him into the room. Thompson observed two cell phones on the side table. One was a I-phone which matched the description he had been given. He turned on the Galaxy phone and had the victim phone it. It rang.

Ammunition [was] found in two guns found in a shoebox with Nix['s] identification which was found underneath one of the twin beds in the hotel room.

Nix had pleaded guilty to three counts of armed robbery, robbing McDonald's, Devoe, and Simon. He said he and Hayes robbed the McDonald's. Exhibit 14 was the handgun Hayes had. Once inside the McDonald's, they did not stay together. Hayes went to where the safe was. Nix watched the two males and took their cell phones.

Hayes moved for a judgment of acquittal as to the robbery of the cell phones because there was no evidence to establish that Hayes was a principal to Nix'[s] robbery of the phones. The court denied the motion. Hayes also renewed his motion for judgment of acquittal for counts 2 and 3, which was denied.

Hayes was found guilty of the three robbery counts while carrying a deadly weapon. Following a separate proceeding, he was found guilty of possession

of ammunition by a convicted felon.

Hayes was sentenced to life as a PRR on counts 1, 2, and 3 and fifteen years on count 4.

Resp. Ex. C at 2-4 (record citations omitted).

## IV.   The Amended Petition

### a. Ground One

Petitioner alleges his appellate attorney was ineffective for failing to raise on direct appeal a claim that the trial court erred in overruling trial counsel's objection to the state's use of a peremptory challenge to strike juror #12, a black female. Doc. 12 at 4-5. According to Petitioner, in response to trial counsel's objection, the state explained juror #12, Ms. Tellas, advised that she knew someone who was robbed at gunpoint and that her uncle was incarcerated for a robbery conviction. Id. at 5. Petitioner contends the trial court did not properly conduct the requisite three-step analysis for race-based peremptory challenges under Batson v. Kentucky, 476 U.S. 79 (1986), and erred in finding that no other jurors gave comparable answers because jurors #3 and #7, who were both white females, provided similar statements but were not challenged by the state. Id.

To add context to Petitioner's claim, the Court summarizes the events that give rise to this allegation. During jury selection, the following exchange occurred between the state, Mr. Milo, and prospective juror #3, Ms. Bruton:

MR. MILO: [Ms. Bruton,] [y]ou also mentioned that you

10

knew somebody or had a close friend or family member that was the victim of a crime?

PROSPECTIVE JUROR: Yes.

MR. MILO: What type of crime?

PROSPECTIVE JUROR: A home invasion.

MR. MILO: Here in Duval County?

PROSPECTIVE JUROR: Yes.

MR. MILO: How long ago?

PROSPECTIVE JUROR: About two years.

MR. MILO: How is that person related to you or how do you know the person?

PROSPECTIVE JUROR: It was myself.

MR. MILO: Was anyone ever caught or arrested?

PROSPECTIVE JUROR: No, not that I know of.

MR. MILO: Did the Jacksonville Sheriff's Office investigate that crime?

PROSPECTIVE JUROR: Yes.

MR. MILO: Were you satisfied with their investigation?

PROSPECTIVE JUROR: Yes.

MR. MILO: You also mentioned that you knew somebody that was arrested or accused of a crime?

PROSPECTIVE JUROR: Yes.

11

MR. MILO: What type of crime?

PROSPECTIVE JUROR: My uncle had a DUI and then another close relative got in fights.

. . . .

MR. MILO: Okay. From what you know about those incidents do you feel like they were treated fairly?

PROSPECTIVE JUROR: Yes.

MR. MILO: Anything about those incidents that would affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR: No.

MR. MILO: Thank you.

Resp. Ex. B at 88-90.

The following exchange occurred between the state and prospective juror

#7, Ms. Peters:

MR. MILO: You also indicated that you knew somebody that was a victim of a crime?

PROSPECTIVE JUROR: Uh-huh. My father-in-law. Their house was broken into when they weren't there. A lot of stuff was stolen.

MR. MILO: Here in Duval?

PROSPECTIVE JUROR: Yes.

MR. MILO: How long ago?

PROSPECTIVE JUROR: It was probably about three years ago.

12

MR. MILO: Were you satisfied with the investigation?

PROSPECTIVE JUROR: Pretty much. And my vehicle was robbed about three times at my complex.

MR. MILO: Just parked outside?

PROSPECTIVE JUROR: Yeah.

MR. MILO: Anybody ever caught for those car burglaries?

PROSPECTIVE JUROR: No. I mean, I didn't hear anything of it. It was just a report that they made.

MR. MILO: Anything about those burglaries affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR: No.

MR. MILO: You also indicated that you have a close friend and I think a family member that was accused or arrested for a crime?

PROSPECTIVE JUROR: Well, that friend got kicked out and I don't really associate with him anymore. . . .

MR. MILO: All right. Well, let's talk about the close friend first, though, if you don't mind.

PROSPECTIVE JUROR: Was.

MR. MILO: Was former close friend. What type of crime?

PROSPECTIVE JUROR: I believe it was for him having drugs on him or something like that. I think he still has a warrant.

13

MR. MILO: Okay. Do you feel he was treated fairly?

PROSPECTIVE JUROR: Yeah.

MR. MILO: Okay. Anything about that affect your ability to be fair and impartial?

PROSPECTIVE JUROR: No.

MR. MILO: I got that feeling, but I had to ask. And then your family member, you said it was your sister?

PROSPECTIVE JUROR: My sister, uh-huh.

MR. MILO: What type of crime?

PROSPECTIVE JUROR: Her and her boyfriend, petty theft and cashing checks.

MR. MILO: So it was your sister's boyfriend?

PROSPECTIVE JUROR: She was cashing the checks and he was part of it. She had (indiscernible).

MR. MILO: Do you feel like she was treated fairly?

PROSPECTIVE JUROR: Yes.

MR. MILO: Okay. Anything about that affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR: No.

MR. MILO: Thank you.

Resp. Ex. B at 100-02.

The record shows the state and prospective juror #12, Ms. Tellas, had the following exchange:

MR. MILO: [Y]ou indicated that you knew somebody that was the victim of a crime?

PROSPECTIVE JUROR: Yeah. He is like a cousin, but a close friend I guess you could say. He got robbed at gunpoint while coming from our house.

MR. MILO: So that was obviously here in Duval County?

PROSPECTIVE JUROR: Yes. And it was, like, probably six months ago.

MR. MILO: Was the person ever caught?

PROSPECTIVE JUROR: Yes, they were eventually caught.

MR. MILO: Is that case still pending?

PROSPECTIVE JUROR: No.

MR. MILO: Are you satisfied with the Sheriff's Office investigation?

PROSPECTIVE JUROR: I suppose he is.

MR. MILO: All right. And from what you know about it --

PROSPECTIVE JUROR: He's fine.

MR. MILO: All right. Moving on. You also indicated that you knew somebody that was accused or arrested for a crime?

PROSPECTIVE JUROR: Yes. My uncle is serving.

MR. MILO: Your uncle is serving time?

15

PROSPECTIVE JUROR: Yeah.

MR. MILO: For what type of crime?

PROSPECTIVE JUROR: Robbery, I believe.

MR. MILO: Was it committed here in Duval County?

PROSPECTIVE JUROR: Yes.

MR. MILO: How long ago?

PROSPECTIVE JUROR: Maybe 14 -- 16 years ago.

MR. MILO: From what you know about it, do you think he was treated fairly?

PROSPECTIVE JUROR: Yeah, I guess.

MR. MILO: Yeah, you guess. There was a hesitation. Why the hesitation and why the "yeah, I guess"?

PROSPECTIVE JUROR: Because the reason is because he had people to, like, try to reopen his case to look into it again because he was charged -- he said he was charged with the 10-20 gun law. So I don't know. I was still in school then so I don't really have a clue as to what he's talking about.

MR. MILO: Fair enough. Let me ask you this. Do you think that you would be able to set that aside and just listen to the facts and evidence in this case?

PROSPECTIVE JUROR: Sure.

MR. MILO: Okay. Thank you, ma'am.

PROSPECTIVE JUROR: You're welcome.

Resp. Ex. B at 108-11.

After questioning, the trial court gave each party ten peremptory strikes.

Id. at 188. The following exchange then occurred:

> MR. MILO: State strikes juror 12, Ms. Tellas.
>
> THE COURT: The State strikes juror number 12, Ms. Tellas. That takes us to 13, Ms. Weglicki. Defense.
>
> MR. BURTON: Defense would request a race-neutral reason for striking Ms. Tellas, juror number 12. She's an African-American female.
>
> THE COURT: State.
>
> MR. MILO: I believe Ms. Tellas stated that she knew somebody that was robbed at gunpoint six months ago. Her uncle is also serving time for a robbery. When I asked her whether she was satisfied and thought he was treated fairly she hesitated and stated, yeah, I guess, sure.
>
> MR. BURTON: Your Honor, she also said that she could be fair and impartial to both the questioning regarding the uncle and I did clarify the questioning about the cousin as well.
>
> THE COURT: You did. And she did. However -- and I would certainly deny it if it was a challenge for cause. However, on a peremptory the standard really well, there's two standards.
>
> One, is it a racially neutral reason? Is it facially sufficient? Has the State given an acceptable race neutral reason? I find that they have in this case.
>
> Secondly, I don't find to this point of the panel that there are any other jurors similarly situated of any race who gave answers similarly to Ms. Tellas that the State has not struck.

So for those reasons I'll deny the defendant's objection to the challenge for cause.

So that takes us to -- excuse me -- challenge for preemptory reason.

Thank you for correcting me.

That takes us to juror number 13, Ms. Weglicki.

Defense, any strikes?

MR. BURTON: Defense would accept the jury, Your Honor.

THE COURT: State?

MR. MILO: State accepts.

THE COURT: All right. Our panel will be – we'll select our alternate in a minute -- will be two, three, seven, eight, nine and thirteen, correct? Is that right?

MR. BURTON: That's correct, Your Honor. It's accepted subject to our objection.

THE COURT: Understood.

State?

MR. MILO: Yes, sir.

THE COURT:  .  .  .  Let's just go with one alternate, number 14, Ms. Barton.

State, is she okay?

MR. MILO: State accepts.

THE COURT: Defense?

MR. BURTON: Defense accepts, Your Honor.

Resp. Ex. B at 190-92.

Following Petitioner's convictions and direct appeal, he filed a petition with the First District Court of Appeal raising this current claim of ineffective assistance of appellate counsel. Resp. Ex. G at 3. The First DCA denied the petition "on the merits." Resp. Ex. H.

Thus, the Court addresses Petitioner's ineffective assistance of appellate counsel claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. See Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989); see also McBride v. Sharpe, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." Philmore, 575 F.3d at 1264; see also Overstreet, 811 F.3d at 1287. Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance. See Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S.

745, 754 (1983)); <u>Owen</u>, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." <u>Philmore</u>, 575 F.3d at 1264-65.

In <u>Sneed v. Florida Department of Correction</u>, 496 F. App'x 20, 26 (11th Cir. 2012), the Eleventh Circuit discussed the purviews of a <u>Batson</u> challenge:

> <u>Batson</u> requires a court to undertake a three-step analysis to evaluate equal protection challenges to a prosecutor's use of peremptory challenges. 476 U.S. at 96-98; <u>McGahee v. Alabama Dep't of Corr.</u>, 560 F.3d 1252, 1256 (11th Cir. 2009). First, a defendant must make a prima facie showing of purposeful discrimination based upon a prohibited ground. <u>Batson</u>, 476 U.S. at 96-97. A prima facie case is established where a defendant shows that "he is a member of a cognizable racial group and that the relevant circumstances raise an inference that the prosecution has exercised peremptory challenges to remove from the venire members of his race." <u>Bui v. Haley</u>, 321 F.3d 1304, 1313 (11th Cir. 2003) (quotation and alterations omitted). Upon such a showing, the burden of proof shifts to the State to provide a race-neutral explanation for excluding the jurors. <u>Batson</u>, 476 U.S. at 97. Finally, in light of the parties' submissions, the trial court has the duty to determine if the defendant established purposeful discrimination. <u>Id.</u> at 98.

<u>Sneed</u>, 496 F. App'x at 26. Here, the record shows that following trial counsel's objection, the state and the trial court complied with the requirements of <u>Batson</u>, and thus appellant counsel cannot be deficient for failing to make a meritless argument on direct appeal. Also, and likely of more import, Petitioner

has neither shown that had appellate counsel made this argument, the outcome of his appeal would have been different, nor has he shown a reasonable probability that had Ms. Tellas served on his jury, the outcome of his trial would have been different. See, e.g., Price, 548 F. App'x at 576 (holding that the petitioner was not prejudiced by trial counsel's failure to make Batson objection, because "'there is no evidence that an African American juror would have seen the evidence any differently than the white jurors seated on the jury.' . . . As the district court noted, race was not the central theme of this case, and did not play a significant role."); Sneed, 496 F. App'x at 27 (holding that the petitioner failed to demonstrate prejudice under Strickland because he "has not shown that, had counsel objected, his challenge would have been successful, nor is it clear that the second prospective black juror being on the jury would have carried a reasonable probability of changing the outcome of the trial.") (citation omitted).

As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One is denied.

**b. Ground Two**

Petitioner alleges his appellate counsel was ineffective for failing to raise

a claim on direct appeal challenging the trial court's denial of his motion to suppress evidence obtained during an unlawful search of his hotel room. Doc. 12 at 6.

For context, the Court summarizes the relevant record evidence. Before trial, trial counsel moved to suppress all evidence seized under a search warrant and evidence of all observations derived from the illegal entry into Petitioner's hotel room without a warrant. Resp. Ex. A at 36. The trial court conducted a hearing on the motion, during which it heard testimony from Officer Kyle Thompson; Detective J.J. Hopely, Jr.;[3] and Petitioner. Id. at 280-345. Officer Thompson testified that on September 29, 2014, he responded to a call to go to the Suburban Lodge which was the possible location of the cellphones of one victim of the robbery. Id. at 282. After receiving more information, Officer Thompson learned the room number of co-defendant Nix. Id. at 282-83. Thompson knocked on the door and Petitioner answered and advised him that Nix was also an occupant of the room. Id. at 283. According to Thompson, Petitioner then let Thompson come into the hotel room to speak with Nix but later denied Thompson consent to conduct a search. Id. at 284. Thompson testified that he then began to exit the hotel room when he noticed two

---

[3] The transcript of the hearing on the motion to suppress refers to this witness has "J.J. Copely, Jr.," but the trial transcript clarifies that this witness's name is "J.J. Hopely, Jr." Resp. Ex. B at 325.

cellphones sitting on the coffee table in plain view. Id. at 285. When Thompson asked about the phones, Petitioner denied ownership of the phones and advised that he had never seen the cellphones before. Id. Thompson then radioed another officer to call one cellphone, and after Thompson turned the phone on, it rang. Id. Thompson then exited the hotel room. Id.

Detective Hopely testified at the hearing that he arrived at the hotel to obtain information for a search warrant. Id. at 291. While officers remained outside the hotel room and kept it under surveillance, Hopely got a warrant and participated in the search of the hotel room. Id. at 292-95. During the search, officers recovered, inter alia, a firearm. Id. at 294. Trial evidence later revealed that officers also recovered clothing matching the clothing Petitioner wore during the robbery, two Bank of America zipper deposit bags taken from McDonald's safe, and two cellphones taken from the victims of the robbery. Resp. Ex. B at 334-35.

Petitioner testified at the hearing that when Thompson knocked on his hotel room door, he opened it and Thompson asked if anyone else was inside. Id. at 300. Petitioner testified that he had a female friend with him and advised Thompson that his roommate, Nix, was in the restroom. Id. at 310. Petitioner stated that when Nix walked out of the restroom, Nix and Thompson went outside to speak. Id. According to Petitioner, he then sat on his bed, began

23

playing on his phone, and a few minutes later, Thompson stepped inside the hotel room and Petitioner advised him he could not enter without a warrant. Id. at 310. Petitioner admitted, however, that once Thompson was inside the room, the cellphones were within his plain view. Id. at 310-11. The trial court also let Petitioner present an excerpt from the deposition testimony of Meredith Alexander, the female occupant of the hotel room, in which she stated Petitioner did not give Thompson permission to enter the hotel room. Id. at 305.

After considering argument from the parties, the trial court denied the motion on the record, finding:

> THE COURT: Okay. Interesting issue. I am going to deny the defendant's motion to suppress. I do think -- really on two -- two grounds. One, and in no particular order, one is a credibility issue. I do find the testimony of the officer to be credible on the issue of whether or not he was given -- initially given permission to enter the room. There doesn't seem to be much point for him to not tell the truth about being denied permission to search, but yet say that he was given permission to enter. It seems that if he was going to be untruthful about one he would be untruthful about the other, and after comparing the testimony of Mr. Hayes and the officer and the witness in the deposition, I do find the officer's credibility or testimony to be more credible on that issue.
>
> The -- and having been given permission to enter the room, it is the testimony that he observed the phones, the items in question, in plain view, and then basically at that point the room was secured shortly thereafter while the warrant was obtained.

And then, secondly, I think that's an inevitably issue. An inevitable discovery issue is probably the more proper way to phrase it. When the officers arrived at the location they had, as I understand the evidence in this case, the testimony in this case, they had already tracked the victims' phones to that location, the location of the Lodge. They furthermore had information that the codefendant was associated with the particular room in question.

And so really we don't even need to reach the Court's hypothetical as to whether or not, even if permission to enter the room had been denied, that they could have simply called the phones and heard them ring and that would have certainly given them further probable cause because I think, based on the testimony without that, there was ample probable cause to obtain a search warrant which they did. For those reasons the Court will deny the defendant's motion to suppress.

Resp. Ex. A at 326-27.

Following trial, Petitioner filed a petition with the First DCA arguing that appellate counsel was ineffective for failing to raise a claim on direct appeal challenging the trial court's denial of his motion to suppress. Resp. Ex. G at 6. The First DCA denied the petition "on the merits." Resp. Ex. H.

Thus, the Court addresses Petitioner's ineffective assistance of appellate counsel claim under the deferential standard for federal court review of state court adjudications. In doing so, the Court again gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. Here, the record shows the trial court conducted a thorough hearing

and made a credibility determination when it found the cell phones were within Officer Thompson's plain view, which ultimately provided enough probable cause to obtain a search warrant. Nothing in the record suggests a factual or legal basis on which appellate counsel could have challenged the trial court's ruling on direct appeal. Thus, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Two is denied.

### c. Ground Three

Petitioner argues that his trial counsel was ineffective for failing to object to hearsay testimony elicited during Officer Nicholas Tirri's trial testimony. Doc. 12 at 8.

Petitioner raised this claim in his amended Florida Rule of Criminal Procedure 3.850 motion. Resp. Ex. I at 101. The trial court summarily denied the claim, finding:

> Defendant's second ground in his Amended Motion alleges counsel rendered ineffective assistance by failing to object, and move for a mistrial, based on the Court's alleged abuse of discretion in admitting testimony of out-of-court statements made by unavailable witness Andrew Devoe that Mr. Devoe's

26

iPhone was taken during the robbery. The testimony referred to is that of Officer Nicholas Tirri, who responded to the robbery at the McDonald's restaurant. Officer Tirri, when asked whether he spoke to anyone after arriving at the McDonald's, testified that he "talked to one of the victims, Mr. Devoe." Officer Tirri testified that "Mr. Devoe advised me that his cell phone was stolen[,]" and went on to describe using the "find my iPhone" app to determine the location of Mr. Devoe's phone. Defendant argues that the hearsay testimony that Mr. Devoe's phone was stolen was the foundation of the State's identification of Defendant; his argument depends upon his assertion that the powering up of the iPhone was illegal because it was done without consent to search and without a warrant. As noted above, when police spoke with Defendant in the premises of the hotel room, Defendant disavowed any ownership of both cell phones on the table, and claimed he had not seen them before. Therefore, Defendant lacked standing to challenge the legality of any search or seizure of those phones.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." § 90.801(l)(c), Fla. Stat. (2019). Officer Tirri's testimony that Mr. Devoe told Officer Tirri his cell phone was taken during the robbery was not offered to prove that Mr. Devoe's phone was stolen; it was offered to explain the police investigation. Moreover, any error in admitting Officer Tirri's testimony that Mr. Devoe told him his cell phone was stolen was harmless in light of the testimony of Detective J. J. Hopely, Jr., that, after arriving at the McDonald's, he spoke with all four employees who had been present during the robbery and that one of the employees, Mr. Devoe, had an iPhone stolen during the robbery. Defendant makes no claim related to Detective Hopely's testimony. At the hotel room, police found at least two Bank of America zipper deposit bags taken from the McDonald's safe, the two cell phones (which Defendant claimed he did

not own and had never seen before), a bag of clothing matching clothing worn by the robbers as seen in surveillance video, and two handguns. Even if Officer Tirri's testimony of Mr. Devoe's statement was offered to prove that Mr. Devoe's phone was stolen during the robbery, admission of that testimony was harmless in light of other evidence that Mr. Devoe's cell phone was stolen during the robbery. Therefore, even if counsel were deficient for not objecting (which this Court does not find), Defendant can show no prejudice. Defendant's second ground in his Amended Motion is without merit.

Resp. Ex. I at 112-13 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial without a written opinion. Resp. Ex. L.

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court defers to the state court's finding that Petitioner fails to show prejudice. Indeed, even assuming trial counsel objected, and this alleged hearsay testimony was excluded, Petitioner fails to demonstrate a reasonable probability exists that the outcome of his trial would have been different considering the totality of the evidence presented at trial. Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court.

See 28 U.S.C. § 2254(d). Ground Three is denied.

### d. Ground Four

Petitioner contends his trial counsel was ineffective for failing to advise him of the "independent act defense" and request an "independent act" jury instruction. Doc. 12 at 9. According to Petitioner, co-defendant Nix's "taking of the phones" was not part of the common plan as Petitioner was in another room getting money from the safe when Nix stole the cellphones. Id. at 9-10.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. I at 3. The trial court summarily denied the claim:

> In Ground One, Defendant alleges counsel rendered ineffective assistance by failing to request an independent-act jury instruction on Counts 2 and 3, and to advise Defendant of the availability of that defense. Had he been made aware of the independent-act defense to principal liability, Defendant avers that he would have testified at trial in support of the theory that his codefendant, Nix, robbed the victims in Counts 2 and 3 of their cell phones without there having been any common design or plan between Defendant and Nix to do so. Defendant posits:
>
>> The facts of this case are undisputed that when co-felon Nix robbed Andrew Devoe and Michael Simon of their cell phones, he exceeded the scope of the original plan. The evidence, when viewed in a light most favorable to the State, evinces that Hayes and Nix planned to rob McDonald's of its money. The evidence showed that Hayes entered the McDonald's and forced McDonald's employee Britney Brown to

give him money from the safe at gunpoint.
Meanwhile, co-felon Nix took it upon
himself to take the cell phones of Devoe and
Simon.

Defendant fails to explain how he might have so
testified at trial without admitting, first, that he was
present at the crime scene and, second, that he did in
fact enter the McDonald's pursuant to a plan to rob the
McDonald's with Mr. Nix. Contrary to Defendant's
assertion that the strategy was "nonsensical," it makes
perfect sense to argue before the jury, as counsel did,
that Defendant was not involved in any of the
robberies, and then, after jury verdicts of guilt on all
counts, to argue a motion for judgment of acquittal to
the Court based on the State's failure to prove that
Defendant was a principal to the cell phone robberies.
To introduce the independent act theory to the jury
would have necessitated an admission of guilt on Count
1, which would still have exposed Defendant to a life
sentence as a PR[R]. Defendant's first ground is
without merit.

Resp. Ex. I. at 108-09 (record citations omitted). Petitioner appealed, and the

First DCA per curiam affirmed the denial without a written opinion. Resp. Ex.

L.

The Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. In doing so, the

Court defers to the state court's finding that trial counsel was not deficient for

failing to assert a defense that would have compelled Petitioner to admit to

committing one of the three charged robberies. Thus, upon thorough review of

the record and the applicable law, the Court concludes that the state court's

decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it was not based on an unreasonable determination of the facts, given the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d). Ground Four is denied.

### e. Ground Five

Petitioner alleges his trial counsel was ineffective for failing to file a motion in limine or object to the state referring to a BB gun, which Petitioner was allegedly carrying, as a 40 caliber Smith and Wesson firearm. Doc. 12 at 11.

In his Rule 3.850 motion, Petitioner raised two claims challenging his alleged possession of a BB gun during the robberies. Resp. Ex. I at 22, 111. The trial court denied the claims:

> Defendant's third ground alleges counsel rendered ineffective assistance by failing to move to dismiss all four Counts and failing to object to the verdict forms, which resulted in Defendant being convicted of an offense not charged. Defendant contends that the Amended Information charged him with armed robbery with a firearm in Counts 1, 2, and 3, but that he actually possessed only a BB gun that looked like a firearm. He also argues that a BB is not "ammunition" to support a conviction on Count 4. Defendant does not contend that his co-felon, Mr. Nix, did not possess an actual firearm with actual ammunition. "[P]ossession of a Firearm by a codefendant is sufficient to convict a defendant of armed robbery, pursuant to the principal theory. . . ." <u>Freeny v. State</u>, 621 So. 2d 505, 506 (Fla. 5th DCA 1993). However, principal liability for

31

possession is not sufficient to support imposition of a mandatory minimum sentence pursuant to section 775.087, Florida Statutes; for that statute to apply, a defendant must have actual, physical possession of a firearm. Id. In the instant case, this Court did not impose a mandatory minimum under section 775.087. Therefore, there was no meritorious objection to be made to the Amended Information or verdict form regarding Counts 1, 2, and 3, and counsel's performance was not deficient for failing to move to dismiss those counts or to object to the verdict form.

As to Count 4, Defendant also asserts that the Amended Information charged a violation of section 790.23(l)(a), Florida Statutes, which reads, "It is unlawful for any person to [possess ammunition] if that person has been: (a) Convicted of a felony in the courts of this state . . . ." Defendant contends that his underlying prior conviction was in Glynn County, Georgia, subjecting Count 4 to dismissal. Defendant also argues that the statute criminalizes possession of a firearm, not ammunition. On that point, Defendant is simply mistaken; the statute makes it a crime to possess a firearm or ammunition. § 790.23(1), Fla. Stat. (2013). As to the state where the prior conviction was obtained, section 790.23(1)(e) reads, "Found guilty of an offense that is a felony in another state, territory, or country . . . ." However, the Amended Information identifies the prior conviction as, "Burglary, in the Superior Court of Glynn County, Georgia, on May 16, 2003 . . . ." Therefore, Defendant was on notice of the crime charged in Count 4, and was not misled about [the] identity of the prior conviction underlying the charge. Technical defects in a charging instrument are not fatal where the information charges every element of an offense and does not mislead the defendant. McMillan v. State, 832 So. 2d 946, 948 (Fla. 5th DCA 2002). Because Count 4 of the Amended Information was not subject to dismissal, counsel was not ineffective for failing to move to dismiss. Defendant's third ground

is without merit.

Defendant's fourth ground alleges that counsel rendered ineffective assistance by failing to file a motion in limine or to object to the State's repeated reference to the BB gun carried by Defendant as a "firearm." Because, as noted above in the analysis of Ground Three, Defendant could be found guilty of armed robbery as a principal, and Defendant does not allege that his co-defendant, Mr. Nix, carried anything other than an actual firearm, there was nothing for counsel to object to, and no prejudice; even had the jury never heard a BB gun referred to as a firearm, that does not undermine confidence in the outcome of the guilty verdicts, where the jury could have found Defendant guilty of armed robbery and  possession of ammunition by a convicted felon as a principal. Defendant's fourth ground is without merit.

Resp. Ex. I at 110-11 (record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. L.

The Court addresses Petitioner's claim in accordance with the deferential standard for federal court review of state court adjudications. And upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Petitioner's claims was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground Five is denied.

### f. Ground Six

Petitioner alleges his trial counsel was ineffective for failing to reasonably investigate the facts of his case and adequately argue that the police had no legal standing to search his hotel room. Doc. 12 at 13.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. I at 15. The trial court summarily denied the claim:

> After hearing evidence and argument on April 14, 2016, this Court denied Defendant's Motion to Suppress. Defendant's second ground attributes that denial to counsel's deficient performance in arguing the motion. At the hearing, this Court weighed the testimony and found the responding officer, Kyle Thompson, more credible than Defendant and the deposition testimony of another occupant of the hotel room where the subject search and seizure occurred. This Court made a finding on the record that Officer Thompson had Defendant's permission to be in the hotel room. Once lawfully in the room, Officer Thompson was authorized to search the cell phones in plain view. See State v. Johnson, 208 So. 3d 843, 846 (Fla. 1st DCA 2017). Moreover, Officer Thompson testified that Defendant denied any knowledge of ownership of the cell phones, and said he had never seen them before. Therefore, there is evidentiary support for the State's assertion that Defendant lacked standing to challenge Officer Thompson's handling the phones and investigating their ownership. "A defendant who voluntarily abandons property or disclaims ownership lacks standing to challenge its search and seizure." State v. Fosmire, 135 So. 3d 1153, 1156 (Fla. 1st DCA 2014). Defendant may maintain that his testimony, not Officer Thompson's, was true, and may point out that the cell phones were not visible from the threshold of the room, but his disagreement with this Court's ruling

34

> does not constitute ineffective assistance of counsel.
> The record of the hearing shows that counsel argued
> the salient points competently; in the instant Motion,
> Defendant simply takes a different view of the evidence
> adduced at the hearing and disagrees with this Court's
> findings. Defendant's second ground is without merit.

Resp. Ex. I at 109 (record citations omitted). Petitioner appealed, and the First

DCA per curiam affirmed the trial court's denial without a written opinion.

Resp. Ex. L.

The Court addresses Petitioner's claim in accordance with the deferential

standard for federal court review of state court adjudications. And upon

thorough review of the record and the applicable law, the Court concludes that

the state court's decision to deny Petitioner's claim was neither contrary to nor

an unreasonable application of Strickland, and it was not based on an

unreasonable determination of the facts in light of the evidence presented to

the state court. See 28 U.S.C. § 2254(d). Ground Six is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 12) is **DENIED** and this case is

**DISMISSED WITH PREJUDICE**.

2.     The **Clerk** shall enter judgment dismissing this case with

prejudice, terminate any pending motions, and close the file.

3.     If Petitioner appeals this denial, the Court denies a certificate of

appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[4]

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of August, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:    Robert Earl Hayes, #J58159
      Counsel of record

---

[4] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.